UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ECURE INDIANA CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-01500-TWP-MG |
| ) | |
| UNITED HEALTHCARE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS
### OR ALTERNATIVELY STAY AND COMPEL ARBITRATION

This matter is before the Court on Defendant United Healthcare Insurance Company's ("United") 12(b)(1) Motion to Dismiss Plaintiff's Complaint for Lack of Standing or, Alternatively, to Stay the Case and Compel Arbitration (Filing No. 49). Plaintiff ECure Indiana Corp. ("ECure") initiated this action asserting claims for unjust enrichment/quantum meruit and suit on account against United, seeking to recover amounts allegedly owed by United for medical services rendered to its insureds (Filing No. 1). The Court previously granted a motion dismissing the claim for suit on account. (*see* Filing No. 40). United now seeks dismissal of the unjust enrichment/quantum meruit claim, or alternatively the parties should pursue arbitration. For the following reasons, United's motion is **granted in part, and denied in part**.

### I.      BACKGROUND

The following well-pleaded factual allegations are accepted as true for purposes of this motion. On July 28, 2022, ECure filed a Complaint against United, seeking to recover the unpaid balance of reimbursement claims under theories of quantum meruit/unjust enrichment and suit on account (Filing No. 1). For many years, the St. Vincent Emergency Physicians, Inc. ("St. Vincent Emergency Physicians") practice group and several other provider groups affiliated with Indiana

Physician Management, LLC (together with St. Vincent Emergency Physicians, "Assignor Physician Groups")[1] provided emergency, lifesaving medical services to members of United's health care service plan. *Id.* ¶ 8. The Assignor Physician Groups were "out-of-network" providers, meaning they had no contractual arrangement with United regarding their services or the reimbursement rate for their services.[2] *See id.* ¶¶ 8, 12. The Assignor Physician Groups were able to set their own reasonable charges for the care they provided, unlike "in-network" providers who agree to a discounted rate in exchange for certain benefits. *Id.* ¶¶ 8, 9.

The Assignor Physician Groups billed United their reasonable and customary rates for the services provided to United's insureds, which may have been up to the full billed charges. *Id.* ¶¶ 11-12. United reimbursed the Assignor Physician Groups for the emergency services provided but paid them less than the amounts they billed. *Id.* ¶¶ 12, 19-20. ECure then purchased the accounts with outstanding reimbursement claims ("the claims") from Assignor Physician Groups and were assigned rights to sue on those claims. *Id.* ¶¶ 8, 13. ECure noted in its Complaint that a full list of underpaid claims would be provided to United upon request. *Id.* ¶ 14. United filed an answer but the answer did not mention an arbitration clause (Filing No. 44).

On or about September 9, 2022, ECure transmitted a spreadsheet of approximately 56,000 claims at issue in this matter to United (Filing No. 65-2 ¶ 3). On September 12, 2022, United

---

[1] The Complaint only references St. Vincent Emergency Physicians practice group (*see* Filing No. 1). However, ECure also alleged that it "will provide a full list of the underpaid claims to [United] upon request." *Id.* ¶ 14. The list of underpaid claims provided by ECure contains claims not just from St. Vincent Emergency Physicians, but also from multiple provider groups affiliated with Indiana Physician Management, LLC. The complete list of provider groups with claims consists of St. Vincent Emergency Physicians, Indiana Physician Management, Indiana Physician Management Hancock, LLC, Indiana Physician Management Northeast, LLC, Indiana Physician Management Clay, LLC, Indiana Physician Management Salem, LLC, Indiana Physician Management Jennings, LLC, Indiana Physician Management Mercy, LLC, Indiana Physician Management Rush, LLC, and Indiana Physician Management Henry, LLC. These entities are referred to collectively as the "Assignor Physician Groups." (*See* Filing No. 54 at 2).

[2] For the purpose of the standing analysis, the parties rely on and discuss Medical Group Participation Agreements that were executed on December 19, 2020 (*e.g.* Filing No. 51-1).

reached out to ECure and requested tax identification numbers ("TINs") for the Assignor Physician Groups explaining that they could not research the claims at issue without that information (Filing No. 66-1 ¶ 2). Prior to receiving the TINs, United filed a Motion to Dismiss pursuant to Federal Rule 12(b)(6) ("first Motion to Dismiss") (Filing No. 20). ECure's counsel provided the TINs on October 31, 2022 (Filing No. 66-1 ¶ 4). United's first Motion to Dismiss was granted in part (*see* Filing No. 40). The Court dismissed Count II, suit on account, without prejudice. *Id.* ECure did not amend the Complaint within the time limit provided by the Court, so the suit on account claim is no longer part of the case.

While the first Motion to Dismiss was pending, litigation proceeded without United mentioning arbitration or the desire to seek a stay. The parties negotiated a case management plan and the Court set a trial date for October 7, 2024 (Filing No. 65-2 ¶¶ 5-10). ECure participated in the discovery process, serving written discovery on United January 3, 2022. *Id.* ¶ 9. United did not serve any written discovery and did not take any depositions but responded to ECure's initial discovery request. *Id.* ¶ 15. On February 2, 2023, United requested a copy of the written contract between it and St. Vincent Emergency Physicians, indicating a belief that an anti-assignment provision therein would dispose of the case. *Id.* ¶ 12. ECure then provided copies of both the contract and the written assignments. *Id.* ¶ 13. On June 2, 2023, United asked ECure if it had produced all assignment documents, to which it responded that it "produced all the assignments of which [it was] presently aware." (Filing No. 52 ¶¶ 22, 23.)

The produced assignments consisted of the following:

- Purchase and Assignment Agreement between Assignor Physician Groups and eCure LLC, a Delaware limited liability company, dated June 9, 2022 (Filing No. 54);

- Assignment and Assumption Agreement between Assignor Physician Groups and Assignee eCure LLC, dated June 9, 2022 (Filing No. 54 at 31-32);

3

- Schedule of Outstanding Bills, dated June 16, 2022 (the "Schedule") (*see* Filing No. 50 at 5);<sup>3</sup>

- Assignment and Assumption Agreement by eCure, LLC to eCure IN, LLC, effective June 9, 2022 (Filing No. 53); and

- Assignment and Assumption Agreement from eCure LLC to eCure Indiana Corp., dated as of June 9, 2022 (Filing No. 55).

Based on ECure's representation that all assignments had been produced, on June 9, 2023, United sent a letter requesting that ECure dismiss the case because they lacked standing, alleging the assignments were invalid (*see* Filing No. 65-2 ¶ 17; Filing No. 65-2 at 7-9). ECure responded stating United's allegations were without merit and they would oppose any motion to dismiss. *Id.* at 23-27. A month later, the parties attended a status conference before Magistrate Judge Mario Garcia. *Id.* ¶ 21. During this status conference, United informed Magistrate Judge Garcia that they intended to seek a stay. *Id.* United also informed Magistrate Judge Garcia that they intended to bring a motion to dismiss based on ECure's lack of standing (Filing No. 52 ¶ 29). On July 26, 2023, ECure produced a corrected assignment agreement, which is backdated to July 27, 2022 (Filing No. 56).

The United contracts with the Assignor Physician Groups each contain dispute resolution provisions which states:

> The parties will work together in good faith to resolve any and all disputes between them ('Disputes') including, but not limited to the existence, validity, scope or termination of this Agreement or any term thereof, with the exception of any question regarding the arbitrability of the Dispute, and the availability of class arbitration or consolidated arbitration, which is expressly waived below. Disputes also include any dispute in which Medical Group is acting as the assignee of one or more Customer.

---

<sup>3</sup> United does not submit the Schedule as it is "irrelevant for the purposes of the Motion and contains confidential protected health information" (Filing No. 50 at 5 n.2).

(Filing No. 51-1 at 17). On August 3, 2023, United filed the instant Motion to Dismiss for Lack of Standing or, Alternatively, to Compel Arbitration ("second Motion to Dismiss") ([Filing No. 49](#)). A day later, United filed a Motion to Stay discovery ([Filing No. 58](#)). The Motion to Stay was granted September 6, 2023, pending resolution of the second Motion to Dismiss (*see* [Filing No. 69](#)).

## II. LEGAL STANDARDS

### A. Dismissal

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

B. **Enforcement of Arbitration Agreement**

Arbitration agreements are viewed favorably under federal law. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Whether an issue is subject to arbitration is a matter of contract interpretation. *Id.* (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

A court must compel arbitration under the Federal Arbitration Act ("FAA") where: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) a party has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The FAA establishes a strong presumption of arbitrability. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### III.   DISCUSSION

ECure asserts a common law claim for quantum meruit/unjust enrichment seeking in excess of $15.1 million in reimbursement from United for services provided by the Assignor Physician Groups. United argues ECure lacks standing and is seeking dismissal pursuant to Rule 12(b)(1). In the alternative, United urges the Court to stay the case and compel arbitration.

A. **Motion to Dismiss**

United argues that ECure lacks standing because the Assignor Physician Groups were contractually barred from assigning the claims at issue and because such assignments took place before ECure was incorporated. The FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). The Court will first address whether ECure has standing before proceeding to the merits of United's alternative motion to compel. *Id.* at 62-63 (quoting

6

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 ("noting in dicta that, to entertain a § 4 petition, a federal court must have jurisdiction over the "underlying dispute")); *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011) (noting whether the parties had a right to enforce an arbitration clause was irrelevant because the matter was not justiciable).

As an initial matter, the Court must decide whether United's motion is a Rule 12(b)(1) motion or a Rule 12(b)(6) motion.  United submits this motion pursuant to Rule 12(b)(1) arguing that ECure lacks Article III standing.  ECure contends that

> At best, UHC's attack on the validity of Plaintiff's assignment raises prudential standing, which goes to the merits, not federal jurisdiction. [United] should have raised these grounds for dismissal as part of its October 6, 2022 Rule 12(b)(6) motion. (Dkt. 21.) It is too late to do so now; [United] has no right to bring a second Rule 12(b)(6) motion to dismiss after it has answered. The Motion must be summarily denied because is not properly brought under Rule 12(b)(1) and cannot be "converted" into a Rule 12(b)(6) motion.

(Filing No. 65 at 7).

Article III standing enforces the United States Constitution's case-or-controversy requirement and provides the basis for subject-matter jurisdiction.  *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).  Prudential standing however "is not jurisdictional in the sense that Article III standing is." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 747 (7th Cir. 2007).  Where an assignment is at issue, both an Article III and prudential standing issue may arise. *Crabtree v. Allstate Prop. & Cas. Ins. Co.*, No. 1:21-cv-399-TBM-BWR, 2022 WL 17813701, at *3 (S.D. Miss. Dec. 19, 2022).  This Court believes the assignment issue United has identified raises both an Article III standing issue and a prudential standing issue.  Accordingly, the Court will review United's motion as a 12(b)(1) motion and address each standing issue raised.

1. **<u>Subject-Matter Jurisdiction</u>**

Article III, § 2 of the Constitution limits the jurisdiction of federal courts to cases or controversies. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). "There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing.*, LLC, 839 F.3d 583, 587 (7th Cir. 2016). This constitutional minimum is jurisdictional. *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 729 (S.D. Ind. 2016). To establish Article III standing, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha*, 807 F.3d at 173 (citation and quotation marks omitted).

    a. **<u>ECure does not have standing to sue on claims occurring after the effective date of the contract pursuant to the contract between United and Assignor Physician Groups.</u>**

United maintains that *all* of ECure's assignments are barred pursuant to the contracts between United and the Assignor Physician Groups. (Filing No. 51-1.) United relies specifically on part of Section 10.6 that reads "[a]ny claims, collection actions or disputes may not be assigned, transferred or sold by either party without the written consent of the other party." (Filing No. 51-1 at 21; *accord* Filing No. 51-2 at 21). ECure contends that this provision does not prohibit the assignment of any claim prior to January 1, 2020, the effective date of the contract. United argues there is no such limitation in the anti-assignment provision.

"The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone." *Art Country Squire, LLC v. Inland Mortg. Corp.*, 745 N.E.2d 885, 889 (Ind. Ct. App. 2001). Contracts are to be read as a whole, and courts should construe the language in a contract so as to not render any

8

words ineffective or meaningless and accept an interpretation that reconciles its provisions. *State Farm Fire & Cas. Co. v. Riddell Nat. Bank*, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013); *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996). All provisions in a contract are presumably there for a purpose. *Indiana Gaming Comp., L.P. v. Blevins*, 724 N.E.2d 274, 278 (Ind. Ct. App. 2000). If a contract provision is clear and unambiguous, the court will "give effect to the intentions of the parties as expressed in the four corners of the document." *Evan v. Poe & Assoc., Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007). Meaning, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). "A contract term is not ambiguous merely because the parties disagree about the term's meaning." *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002). "An ambiguity exists only where reasonable people could come to different conclusions about the contract's meaning." *Id.*

United draws this Court's attention to only one part of Section 10.6. ECure contends that United cannot read a single sentence out of context. This Court agrees. Section 10.6, found in Article X, "Miscellaneous Provisions," states in its entirety: "**No third-party beneficiaries.** United and Medical Group are the only entities with rights and remedies under this Agreement. Any claims, collection actions or disputes may not be assigned, transferred or sold by either party without the written consent of the other party." (Filing No. 51-1 at 21; *accord* Filing No. 51-2 at 21) (first emphasis in original, second emphasis added). The contracts became effective January 1, 2020. *See e.g.,* Filing No. 51-1 at 2 ("This Agreement is effective on the later of 01/01/2020 or the first day of the first calendar month that begins at least 30 days after the date this Agreement has been executed by all parties); *see also id.* at 23 (evidence that the agreements were executed 12/13/2019).

For an anti-assignment clause to be valid, it "must clearly detail the prohibited assignment." *Winamac Southern Ry., Co. v. Toledo, Peoria and Western, Corp.*, No. 3:09-cv-86, 2012 WL 2838607, at *4 (N.D. Ind. July 9, 2012). United argues the anti-assignment clause is as broad as possible, "covering 'any' claims, collection actions or disputes." (Filing No. 50 at 10.) United also relies on the term "disputes" being defined as "any and all disputes between [the parties]." (Filing No. 51-1 at 17; *accord* Filing No. 51-2 at 17). But when accepting United's interpretation, it would render the second sentence of Section 10.6 ineffective and meaningless which is inconsistent with the basic principles of contract interpretation. The second sentence expresses the intent of Section 10.6 that United and Assignor Physician Groups remain the "only entities with rights and remedies under this agreement." *Id.* at 21 (emphasis added). The anti-assignment provision at issue unambiguously prohibits assignment of claims arising "under this agreement" without the consent of the other party.[4] United maintains, and ECure does not dispute, that written consent was not acquired and therefore any assignments of post-effective date claims are invalid. Accordingly, United's second Motion to Dismiss is **granted** as to any and all claims arising after January 1, 2020, the effective date of the agreement.

### b. ECure has standing to sue on pre-effective date claims because the purported assignment occurred after they were incorporated.

United also maintains that ECure lacks standing because they lack a valid assignment. United argues the purported assignments occurred before ECure was incorporated. A corporation's existence begins when the articles of incorporation are filed. *DFS Secured Healthcare Receivables Tr. v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 343-44 (7th Cir. 2004). United argues eCure LLC "entered into an 'Assignment and Assumption Agreement' with [ECure]" on June 9, 2022,

---

[4] The Court notes there is nothing in the contracts at issue which would prohibit assignment of claims arising prior to the effective date. United also fails to submit any additional contracts contemplating such claims.

but ECure was not incorporated until July 22, 2022 ([Filing No. 50 at 12](#)).  Because ECure did not exist at the time the Assignment and Assumption Agreement was signed, United argues they lack subject matter jurisdiction.

When there is a challenge to subject matter jurisdiction, the court must determine whether there has been a "facial" challenge or a "factual" challenge.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).  A facial challenge contends that the allegations in the complaint are insufficient, whereas a factual challenge contends that "'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Silha*, 807 F.3d at 173 (affirming dismissal on Rule 12(b)(1) grounds when plaintiffs could not establish standing); *Villasenor v. Indus. Wire & Cable, Inc.*, 929 F. Supp. 310, 312 (N.D. Ill. 1996).  Typically, when reviewing a motion to dismiss under Rule 12(b)(1), "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor. …" *Reid L. v. Ill State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).  But in response to a factual challenge, the plaintiff must produce specific evidence to satisfy each of the elements necessary to establish their standing to sue.  *Apex Digital, Inc.*, 572 F.3d at 444.

The plaintiff bears the burden of establishing standing to pursue its claims.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Since standing is an indispensable part of the plaintiff's case it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.*  "Jurisdictional allegations must be supported by 'competent proof,' which means that there must be a showing by 'a preponderance of the evidence or proof to a reasonable probability that jurisdiction exists.'" *F.D.I.C. v. J.P. Morgan Acceptance Corp. I*, 958 F. Supp. 2d

1002, 1004 (S.D. Ind. 2013) (quoting *NLFC, Inc., v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

In response to United's factual challenge, ECure produces the declaration of Eliot Listman ("Listman"), Chief Executive Officer of ECure and ECURE, LLC (*see* Filing No. 65-1). Listman declares that shortly after ECure had been incorporated, he caused ECURE, LLC to assign all of St. Vincent Emergency Physicians' reimbursement claims over to them.[5] *Id.* ¶ 8. He affirms that the assignment was "oral in nature." *Id.* Following the oral assignment, it was memorialized in a writing that contained an "error, mistakenly indicating that the assignment occurred prior to [ECure's] incorporation." *Id.* ¶ 9. This mistake was then corrected in an updated Assignment and Assumption Agreement. *Id.* ¶ 10. Listman does not provide a date on which the oral contract occurred, nor does he provide a date as to when the corrected assignment was executed. *See id.* ¶¶ 9-10. But the Assignment and Assumption agreement is dated July 27, 2022, a day before this case was filed, on July 28, 2022. *Id.* at 4; (*see* Filing No. 1). Moreover, "[a]t the time [ECure] initiated this legal action, it had been assigned full rights to pursue all the reimbursement claims in this action" since the assignment was duly ratified by ECure prior to the initiation of the lawsuit (Filing No. 65-1 at ¶¶ 11, 12).

Though the timing of events aligns with United's theory of ECure "cur[ing] its standing defects after the filing of the complaint," at this stage of litigation, the evidence is sufficient to establish competent proof.[6] *See Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 743, n. 2 (7th Cir.

---

[5] The Assignment and Assumption Agreement makes clear that ECURE, LLC assigned all rights, remedies, title, and interests, in the Outstanding Bills listed in Schedules signed by both Parties (*see* Filing No. 65-1 at 4). These outstanding bills include all claims listed in the original Purchase and Assignment Agreement between Assignor Physician Groups and eCure LLC (*see id.*; *see* Filing No. 54).

[6] There is limited evidence regarding the validity of the oral contract alleged by Listman. However, since United submits no contradicting evidence as to the validity of the contract, this Court finds it is more likely than not that an oral contract was executed. If additional discovery reveals that the contracts with ECure were executed after

2009) ("[A] plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards."). There is no evidence contradicting the validity of the oral assignment which was seemingly made after incorporation and before initiation of the suit. Accordingly, United's motion to dismiss is **denied** as to any and all claims arising before the effective date of the agreement.

B. <u>**Motion to Compel Arbitration**</u>

United asks this Court to stay the case and compel arbitration because its contracts with Assignor Physician Groups contained a binding and enforceable arbitration provision which covers "any and all disputes." (Filing No. 50 at 3; *see* Filing No. 51-1 at 17).

Through the FAA, Congress has declared "a liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts should uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Parties are only required to arbitrate those issues they have agreed to arbitrate. *Kiefer Specialty Flooring, Inc.*, 174 F.3d at 909. Should the court decide that an agreement to arbitrate exists and that the claim is arbitrable under the agreement, the FAA instructs the court to stay proceedings subject to arbitration. *See* 9 U.S.C. §§ 3-4.

---

incorporation and standing was manufactured after filing of the case, United may file any appropriate motion, including one for sanctions.

ECure contends that United has waived the right to arbitration and that the arbitration provision does not cover the pre-effective date claim disputes remaining at issue. The Court will discuss each in turn.

### 1. **United has not waived their contractual right to demand arbitration.**

Waiver is an issue for this Court to decide. *Pro. Constr., Inc. v. Historic Walnut Square*, LLC, 224 N.E.3d 352, 359 (Ind. Ct. App. 2023) ("[C]ourts are the proper arbiters of whether a party has waived its right to arbitrate by litigation-related conduct.… [O]ther procedural conditions precedent to arbitration, however, remain presumptively reserved for the arbitrator."). Waiver can be explicitly or implicitly inferred from a party's actions. *St. Mary's Med. Ctr. Of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). ECure does not specifically contend that United has explicitly waived its right to arbitration. Therefore, the Court must decide whether waiver can be inferred from United's actions.

The Seventh Circuit has held that waiver can be inferred when "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002); *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 950 (7th Cir. 2020) (finding waiver). Some factors courts look at when determining if waiver of the right to arbitration has occurred is "the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Capitol Const. Servs., Inc. v. Farah, LLC*, 946 N.E.2d 624, 628 (Ind. Ct. App. 2011).

Here, the timing of United's arbitration request was reasonable. Although United filed its motion to compel arbitration on August 3, 2023, a year after the case had been filed, it was with good reason. United explains the delay in filing was due to ECure not providing relevant

14

information at the outset of the case. As stated previously, the Complaint only refers to St. Vincent Emergency Physicians as assigning claims when there are actually ten different legal entities whose assigned claims are at issue. Because ECure failed to list all entities with claims at issue in the Complaint, United did not have knowledge of all applicable arbitration provisions for Assignor Physician Groups at the time the first Motion to Dismiss was filed (*see* Filing No. 20 (first Motion to Dismiss filed on October 6, 2022)). United was not provided with TINs for the Assignor Physician Groups until October 31, 2022 (*see* Filing No. 66-1 ¶ 4). At that time, briefing for the first Motion to Dismiss was almost complete and United argues that filing a motion to arbitrate while awaiting the results of the motion to dismiss "would have made little to no sense." (Filing No. 67 at 16.) Once the order on the first Motion to Dismiss was entered (Filing No. 40), United completed its meet and confer process with ECure and promptly filed this second Motion to Dismiss two months later. This Court finds that the presumption of waiver has been rebutted. *Cf. Cabinetree of Wis., Inc. v. Kraftmaid Cabintry, Inc.*, 50 F.3d 388, 388-91 (7th Cir. 1995) (finding that the presumption of waiver had not been rebutted when the only reason defendants gave for waiting nine months to file the motion to stay and compel arbitration was "needing time 'to weigh its options'").

Also, the only dispositive motions United has filed are its two motions to dismiss. The Seventh Circuit has explicitly stated that a party does not waive its right to arbitrate a dispute simply by filing a motion to dismiss. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004); *see Faulkenburg v. CB Tax Franchise Sys.*, LP, 637 F.3d 801, 807 (7th Cir. 2011) (holding defendants did not waive arbitration by filing a motion to dismiss for improper venue); *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (finding defendants actions did not amount to implicit waiver when they removed the case to federal court

and promptly sought to dismiss the case by invoking the arbitration clause); *Capital Const. Services, Inc.*, 946 N.E.2d at 628-30 (where plaintiff engaged in litigation for approximately twenty months before requesting arbitration, the court held they did not waive their right to arbitration). United seeking dismissal for lack of standing is not inconsistent with a desire to arbitrate. Lastly, ECure has not demonstrated that United has unfairly manipulated the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling.

ECure argues they have been prejudiced by United's delay in seeking arbitration because (1) they had to defend two successive motions to dismiss for failure to state a claim and for lack of standing, (2) they negotiated a case management plan, and (3) discovery was scheduled to end approximately five months from the date the second Motion to Dismiss was filed (Filing No. 65 at 26). First, as noted above in Section III(A)(1), *supra*, United's second Motion to Dismiss is for lack of subject-matter jurisdiction. Second, this Court does not find ECure prejudiced by having to negotiate a case management plan. Third, ECure's argument about discovery ending in approximately five months is now moot as discovery has been stayed in this case pending resolution of this Motion (*see* Filing No. 69). Each party will have the opportunity to continue with discovery following entry of this Order. ECure has not successfully demonstrated how they have been prejudiced and United's actions were not inconsistent with an intent to arbitrate. Accordingly, United has not waived its claim to arbitrate.

      2.      **<u>Arbitrability should be decided by the arbitrator.</u>**

"Generally, district courts have no discretion to deny a motion to compel arbitration when the parties have signed an arbitration agreement." *Tenbrink v. Toshiba Am. Med. Sys., Inc.*, No. 1:12-cv-01214-TWP, 2013 WL 3071276, at *4 (S.D. Ind. June 18, 2013). United argues that if ECure disputes the arbitrability of the claims, such dispute should be referred to arbitration as well because "the parties delegated that issue to the arbitrators through incorporation of the [American

Arbitration Association's ("AAA")] arbitration rules." (Filing No. 50 at 18.) ECure responds that the contract makes clear that this Court has the power to decide issues of arbitrability (Filing No. 65 at 27). The Arbitration Provision located in Article VIII, "Dispute Resolution" states:

> The parties will work together in good faith to resolve any and all disputes between them ("Disputes") including, but not limited to the existence, validity, scope or termination of this Agreement or any term thereof, with the exception of any question regarding the arbitrability of the Dispute, and the availability of class arbitration or consolidated arbitration, which is expressly waived below. Disputes also include any dispute in which Medical Group is acting as the assignee of one or more Customer. In such cases, Medical Group agrees that the provisions of this Article VIII will apply, including without limitation the requirement for arbitration.
>
> ….
>
> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it may do so only by submitting the Dispute to binding arbitration conducted by the [] [AAA] in accordance with the AAA Healthcare Payor Provider Arbitration Rules, as they may be amended from time to time (see http://www.adr.org)….

(Filing No. 51-1 at 17).

ECure contends that Article VIII presents conflicting instructions which dispel any intent to arbitrate all issues (Filing No. 65 at 28). ECure refers to the portion of Article VIII that reads: "In the event any court determines that this arbitration procedure is not binding or otherwise allows litigation involving a Dispute to proceed, the parties hereby waive any and all right to trial by jury in, or with respect to, litigation." (Filing No. 51-1 at 18.) United replies that there are no conflicting instructions; rather, that *if* the Court refuses to enforce the arbitration clause, the right to a jury trial is waived (Filing No. 67 at 18).

Article VIII contains clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("[C]ourts should not assume that the parties agreed to arbitrate

arbitrability unless there is clear and unmistakable evidence that they did so.").  This court has previously held that an "arbitration provision's incorporation of the AAA rules is a clear and unmistakable expression of intent by the contracting parties to leave the question of arbitrability to an arbitrator." *Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014).  Here, Article VIII incorporates arbitration rules, specifically the AAA Healthcare Payor Provider Arbitration Rules (*see* Filing No. 51-1 at 17).  Rule 7 of the AAA Rules expressly grants to the arbitrator "the power to rule on his or her jurisdiction." *Gilman*, 61 F. Supp. 3d at 800; *see* AAA Healthcare Payor Provider Arbitration Rules and Mediation Procedures (Oct. 1, 2022), https://go.adr.org/rs/294-SFS-516/images/2022_Healthcare_Payor_Provider_Rules_Web.pdf.  Thus, the dispute regarding arbitrability should be referred to the arbitrator.

## IV.  CONCLUSION

For the reasons discussed above, United's Motion to Dismiss Plaintiff's Complaint for Lack of Standing or, Alternatively, to Stay the Case and Compel Arbitration, (Filing No. 49), is **GRANTED in part and DENIED in part**. All claims occurring after the effective date of the contract between United and Assignor Physician Groups are **DISMISSED**.  All claims occurring before the effective date of the same contract may proceed with arbitration as provided by the Agreement.  Because all remaining matters in this suit are subject to arbitration, the underlying proceedings are **STAYED** pending the outcome of arbitration.  The parties are to notify the Court of the outcome of arbitration **within ten (10) days** of conclusion of those proceedings.

SO ORDERED.

Date:  3/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Avi William Rutschman
ATHENE LAW, LLP
avi@athenelaw.com

Eric D. Chan
ATHENE LAW, LLP
eric@athenelaw.com

John M. Mead
CLARK QUINN MOSES SCOTT & GRAHN, LLP
jmead@clarkquinnlaw.com

Ashleigh Kaspari
CROWELL & MORING LLP
akaspari@crowell.com

Marlee Santos
CROWELL & MORING LLP
msantos@crowell.com

Nathanial J. Wood
CROWELL & MORING LLP
nwood@crowell.com